1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  PACIFIC MDF PRODUCTS, INC.,
                                        NO. CIV. S-05-642 LKK/JFM
12
            Plaintiff,
13
        v.                                   O R D E R
14
    BIO-MASS ENERGY CONCEPTS, LLC;
15  ADVANCED RECYCLING EQUIPMENT,
    INC.; and DONALD KUNKEL,
16
            Defendants.
17  _____/

18  AND RELATED COUNTER-CLAIMS.
    _____/
19

20      This case involves a contract dispute over the purchase of

21  equipment and equipment packages used to convert sawdust into

22  various forms of energy.  Pending before the court is defendant

23  Donald Kunkel's motion for summary judgment and, in the

24  alternative, motion for partial summary adjudication.  Kunkel

25  argues that he cannot be held liable in his individual capacity.

26  For the reasons set forth below, defendant's motion for summary

                                  1

1 judgment is denied, and the motion for partial summary adjudication

2 is granted in part and denied in part.

3                          **I. Facts**[1]

4     Plaintiff Pacific MDF Products, Inc. ("Pacific MDF")

5 manufactures a variety of products, including bases, casings, and

6 crown moldings, out of medium density fiberboard ("MDF").   The

7 process of manufacturing these products consumes a large amount of

8 electricity and also produces a significant amount of MDF sawdust,

9 which plaintiff is required by law to capture and dispose of at

10 significant cost.   Defendants Bio-Mass Energy Concepts ("BEC") and

11 Advanced Recycling Equipment, Inc. ("ARE") approached plaintiff

12 with a proposal for a system that would convert the sawdust into

13 multiple forms of energy.   Specifically, they proposed a

14 "cogeneration" system that would burn sawdust to produce steam,

15 which would in turn produce electricity to run Pacific MDF's plant.

16 On April 15, 2003, plaintiff entered into a contract with ARE and

17 BEC to purchase equipment and equipment packages for the

18 cogeneration system.

19     Defendant Donald Kunkel ("defendant"), ARE's majority owner,

20 first met with Pacific MDF representatives on April 2, 2001.[2]

21 Def.'s Statement of Undisputed Fact ("SUF") ¶ 11.   These

22 representatives included Douglas Hanzlick, the president of Pacific

23

24         [1] All facts are undisputed unless otherwise noted.

25         [2] Plaintiff disputes that the meeting occurred on this date,
   but the precise date of the meeting is immaterial for the purposes
26 of the motion pending before the court.

MDF, and William Gregory, the vice president of Pacific MDF, as well as several key Pacific MDF staff who would be involved in the cogeneration project.  The meeting initially took place in the main conference room at Pacific MDF's facility.  Pl.'s Additional Statement of Undisputed Fact ("ASUF") ¶ 1.  When Hanzlick asked defendant if he would provide the financial statements of ARE/BEC and a performance bond, defendant declined to answer and said that the conversation should take place between the owners of the companies.

Following the meeting in the conference room, defendant, Hanzlick, and Gregory adjourned to a meeting in Hanzlick's private office.  When Hanzlick renewed his request for the financial statements of ARE/BEC and a performance bond, defendant responded: "Doug, I know that you are a wealthy man, but so am I.  I just sold my company for $50,000,000.  We are a private company.  We don't give out financial sheets.  We don't have any debt.  So you don't need a financial statement."  SUF ¶ 15.  No efforts were made to investigate this claim.  Gregory, who attended the meeting to ensure that Pacific MDF was doing business with a reputable company, did not request any proof of the alleged sale, nor did he undertake any independent verification of the sale.  Similarly, even though Hanzlick was "a wealthy man with various consultants and resources at his disposal to investigate that information," he also did not investigate defendant's statement.  SUF ¶ 22.

When questioned at the meeting about which entity would have ultimate responsibility for the entire system, defendant stated,

3

1 "That is the beauty of BEC in that we put this all together.  And
2 if you have any problem, there is only one person to look [to], and
3 that is me."  SUF ¶ 12.  At this point, defendant took his finger,
4 made a big circle, and pointed it back at himself to emphasize the
5 point that he would be the only person responsible for the system.

6     Two years later, on April 15, 2003, plaintiff and ARE/BEC
7 entered into a contract in which plaintiff purchased equipment and
8 equipment packages for the cogeneration system.  The contract
9 consisted of two parts, a proposal and purchase agreement.  The
10 proposal was signed by Hanzlick and Dave Gamble, the president of
11 BEC.  The purchase agreement was signed by Hanzlick and defendant,
12 as the authorized signatory of ARE.  The final contract contained
13 a refund and removal clause which provided plaintiff with a full
14 refund and removal of the equipment at ARE/BEC's cost if the system
15 did not work as promised.  This clause was not present in the first
16 revision of the contract in October 2002, but was inserted at a
17 later date upon the suggestion of Gregory.

18     On March 31, 2005, plaintiff filed its complaint against ARE,
19 BEC, and defendant Kunkel.  The complaint alleges, inter alia,
20 breach of express warranty, breach of implied warranties, fraud,
21 negligent misrepresentation, and violation of section 17200 of the
22 California Business and Profession Code.  Pending before the court
23 is defendant Kunkel's motion for summary judgment and, in the
24 alternative, motion for partial summary adjudication.

25             **II. Standard**

26      **SUMMARY JUDGMENT STANDARDS UNDER FED. R. CIV. P. 56**

4

1    Summary judgment is appropriate when it is demonstrated

2  that there exists no genuine issue as to any material fact, and

3  that the moving party is entitled to judgment as a matter of

4  law.  Fed. R. Civ. P. 56(c); See also Adickes v. S.H. Kress &

5  Co., 398 U.S. 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51

6  F.3d 848, 853 (9th Cir. 1995).

7    Under summary judgment practice, the moving party

8         [A]lways bears the initial responsibility of
          informing the district court of the basis
9         for its motion, and identifying those
          portions of "the pleadings, depositions,
10        answers to interrogatories, and admissions
          on file, together with the affidavits, if
11        any," which it believes demonstrate the
          absence of a genuine issue of material fact.
12
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here
13
   the nonmoving party will bear the burden of proof at trial on a
14
   dispositive issue, a summary judgment motion may properly be
15
   made in reliance solely on the 'pleadings, depositions, answers
16
   to interrogatories, and admissions on file.'"  Id.  Indeed,
17
   summary judgment should be entered, after adequate time for
18
   discovery and upon motion, against a party who fails to make a
19
   showing sufficient to establish the existence of an element
20
   essential to that party's case, and on which that party will
21
   bear the burden of proof at trial.  See id. at 322.  "[A]
22
   complete failure of proof concerning an essential element of the
23
   nonmoving party's case necessarily renders all other facts
24
   immaterial."  Id.  In such a circumstance, summary judgment
25
   should be granted, "so long as whatever is before the district
26

5

1   court demonstrates that the standard for entry of summary

2   judgment, as set forth in Rule 56(c), is satisfied."  Id. at

3   323.

4       If the moving party meets its initial responsibility, the

5   burden then shifts to the opposing party to establish that a

6   genuine issue as to any material fact actually does exist.

7   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

8   586 (1986); see also First Nat'l Bank of Ariz. v. Cities Serv.

9   Co., 391 U.S. 253, 288-89 (1968); Secor Ltd., 51 F.3d at 853.

10      In attempting to establish the existence of this factual

11  dispute, the opposing party may not rely upon the denials of its

12  pleadings, but is required to tender evidence of specific facts

13  in the form of affidavits, and/or admissible discovery material,

14  in support of its contention that the dispute exists.  Fed. R.

15  Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; see also First

16  Nat'l Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954

17  (9th Cir. 1998).  The opposing party must demonstrate that the

18  fact in contention is material, i.e., a fact that might affect

19  the outcome of the suit under the governing law, Anderson v.

20  Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Owens v. Local

21  No. 169, Ass'n of Western Pulp and Paper Workers, 971 F.2d 347,

22  355 (9th Cir. 1992) (quoting T.W. Elec. Serv., Inc. v. Pacific

23  Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)), and

24  that the dispute is genuine, i.e., the evidence is such that a

25  reasonable jury could return a verdict for the nonmoving party,

26  Anderson, 477 U.S. 248-49; see also Cline v. Indus. Maint. Eng'g

1  & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 1999).

2       In the endeavor to establish the existence of a factual

3  dispute, the opposing party need not establish a material issue

4  of fact conclusively in its favor.  It is sufficient that "the

5  claimed factual dispute be shown to require a jury or judge to

6  resolve the parties' differing versions of the truth at trial."

7  First Nat'l Bank, 391 U.S. at 290; see also T.W. Elec. Serv.,

8  809 F.2d at 631.  Thus, the "purpose of summary judgment is to

9  'pierce the pleadings and to assess the proof in order to see

10 whether there is a genuine need for trial.'"  Matsushita, 475

11 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's

12 note on 1963 amendments); see also Int'l Union of Bricklayers &

13 Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc., 752

14 F.2d 1401, 1405 (9th Cir. 1985).

15      In resolving the summary judgment motion, the court

16 examines the pleadings, depositions, answers to interrogatories,

17 and admissions on file, together with the affidavits, if any.

18 Rule 56(c); see also In re Citric Acid Litigation, 191 F.3d

19 1090, 1093 (9th Cir. 1999).  The evidence of the opposing party

20 is to be believed, see Anderson, 477 U.S. at 255, and all

21 reasonable inferences that may be drawn from the facts placed

22 before the court must be drawn in favor of the opposing party,

23 see Matsushita, 475 U.S. at 587 (citing United States v.

24 Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam); see also

25 Headwaters Forest Def. v. County of Humboldt, 211 F.3d 1121,

26 1132 (9th Cir. 2000).  Nevertheless, inferences are not drawn

1  out of the air, and it is the opposing party's obligation to

2  produce a factual predicate from which the inference may be

3  drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp.

4  1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th

5  Cir. 1987).

6      Finally, to demonstrate a genuine issue, the opposing party

7  "must do more than simply show that there is some metaphysical

8  doubt as to the material facts. . . . Where the record taken as

9  a whole could not lead a rational trier of fact to find for the

10  nonmoving party, there is no 'genuine issue for trial.'"

11  Matsushita, 475 U.S. at 587 (citation omitted).

### III. Analysis

13      Defendant moves for summary judgment on the grounds that he

14  entered into the contract with Pacific MDF as an agent of ARE,

15  rather than in his individual capacity.  Accordingly, he

16  maintains that any liability arising out of the contract flows

17  only to ARE and that summary judgment should be granted as to

18  all claims.  In the alternative, defendant seeks partial summary

19  adjudication as to each claim.  Specifically, he argues that the

20  fraud and negligent misrepresentation claims fail because

21  plaintiff has not proven the element of reasonable reliance, and

22  that damages are not available under section 17200 of the

23  California Business and Profession Code.  For the reasons set

24  forth below, defendant's motion for summary judgment is denied,

25  and the motion in the alternative for partial summary

26  adjudication is granted in part and denied in part.

**A. Defendant Kunkel's Individual Liability**

The crux of defendant's motion for summary judgment is that he cannot be held liable in his individual capacity because he was acting as a representative of ARE in executing the contract. Plaintiff responds that its claims against defendant do not arise out of the written contract but, rather, arise out of defendant's conduct prior to execution of the contract. As explained below, the court finds that there is a genuine dispute as to whether defendant was acting in his individual or representative capacity before the contract was signed. Accordingly, summary judgment must be denied.

It is well-settled law that an agent is not responsible for liability stemming from a contract entered into on behalf of a principal. Restatement of Agency 2d, § 328 ("An agent, by making a contract only on behalf of a competent disclosed or partially disclosed principal whom he has power to bind, does not thereby become liable for its non-performance."). Here, there is no dispute that when defendant entered into an agreement with plaintiff, he did so only as an authorized agent of ARE. Accordingly, while there was privity of contract between plaintiff and ARE, there was no such privity between plaintiff and defendant.

Plaintiff maintains, however, that defendant's liability stems not from his conduct in executing the contract but from the representations that he made prior to executing the contract. Some of these representations -- specifically, those

9

made during the meeting on April 2, 2001 -- clearly create a
genuine dispute about whether defendant was acting within his
representative capacity.  However, the other representations --
those related to defendant's ability to perform -- present a
closer issue.  The court addresses each category of these
representations in turn.

**1. Representations Made During the April 2, 2001 Meeting**

First, plaintiff has identified several representations
made by defendant on April 2, 2001 that could reasonably be
construed as statements made within his individual capacity.
For example, at the meeting, when plaintiff asked defendant who
would have ultimate responsibility for the entire system,
defendant responded: "That is the beauty of BEC in that we put
this all together.  And if you have any problem, there is only
one person to look [to], and that is me."  SUF ¶ 12.  Indeed, at
that same meeting, defendant made a big circle with his finger
and pointed it back at himself to emphasize that he bore
ultimate responsibility for the entire system.

Furthermore, in response to requests by Hanzlick, president
of Pacific MDF, for a performance bond and/or financial
statements from ARE/BEC, defendant declined.  This request was
made at the main conference room at Pacific MDF's offices, in
the presence of several Pacific MDF staff.  Plaintiff responded
that this was a conversation that should take place between the
owners of the companies.  Following this meeting, defendant and
Hanzlick adjourned to a private office, where defendant declined

to provide a performance bond or financial statements.  Instead,
he offered the following assurance: "Doug, I know you are a
wealthy man, but so am I.  I just sold my company for
$50,000,000.  We are a private company.  We don't give out
financial sheets.  We don't have any debt.  So you don't need a
financial statement."  SUF ¶ 15.

There is clearly a genuine dispute as to whether defendant
was acting in his representative capacity when making these
statements.  Indeed, the persuasive force of defendant's
statements relies upon the fact that he was making a personal
guarantee, rather than a representative guarantee; otherwise, a
performance bond and the financial statements would have still
been needed to assuage plaintiff's concerns.

**2. All Other Representations**

It is a closer issue whether the other representations
identified by plaintiff could reasonably be construed as
statements made in defendant's individual capacity.  These
representations mostly pertain to defendant's ability to perform
(the "performance-related representations").  Compl. ¶ 35.  For
instance, it is undisputed for purposes of this motion that
defendant lied when he represented that ARE/BEC had the
experience to provide a turnkey co-generation facility, that the
entire system would be automated, and the equipment used in the
facility would be new.

Defendant characterizes the performance-related
representations as ones made in his representative capacity.

Admittedly, these representations are unlike those containing self-evident personal guarantees, for instance, or those made under circumstances suggesting that defendant was stepping outside his role as a representative of ARE (e.g., private office meetings).  Nevertheless, the evidence that defendant cites in support of its contention that the representations were made in a representative capacity is simply silent as to that issue.[3]

Accordingly, defendant has failed to tender sufficient evidence to establish the absence of a genuine dispute on the issue.  Moreover, the general presumption is that no agency exists, and that each person is acting for himself or herself. See Inglewood Teachers Ass'n v. Public Employment Relations Bd., 227 Cal. App. 3d 767, 780 (2d Dist. 1991) ("The law indulges in no presumption that an agency exists but instead presumes that a person is acting for himself and not as agent for another.") (internal quotation marks omitted).

The question of agency is, typically, one for the jury to resolve.  See L. Byron Culver & Assocs. v. Jauodi Industrial & Trading Corp., 1 Cal. App. 4th 300, 305 (4th Dist. 1991) ("The existence of an agency is a factual question within the province of the trier of fact."); Pistone v. Superior Court, 228 Cal.

---

[3] The evidence consists of defendant's response to an interrogatory.  Bodzin Decl., Ex. E, 8:11-9:16.  The response merely recites the alleged misrepresentations but does not disclose any facts that would assist in the determination of whether they were made in defendant's individual or representative capacity.

App. 3d 672, 679 (1st Dist. 1991) ("The existence or absence of agency ordinarily poses a question of fact.  Unless the evidence permits only one inference, the question is one for the trier of fact.").

In order to prevail on summary judgment as to the entirety of the case, defendant must prove that he was acting in his representative capacity at all relevant times.  He has not met this burden here, at least with respect to the aforementioned representations.  Accordingly, the court denies defendant's motion for summary judgment.

**B. Liability for Each Claim**

Having addressed defendant's liability as a general matter, the court turns to defendant's motion for partial summary adjudication as to each claim.  These claims include (1) breach of express warranty, (2) fraud, (3) negligent misrepresentation, and (4) violation of section 17200 of the California Business and Profession Code.  Plaintiff has abandoned two other claims with respect to defendant.[4]

**1. Breach of Express Warranty**

First, defendant moves for partial summary adjudication as to the breach of express warranty claim.  An express warranty

---

[4] This includes the first cause of action for breach of express warranty arising out of the written contract.  As discussed above, this claim is not viable against Kunkel, who was acting in his representative capacity in signing the contract.  However, plaintiff has not abandoned its second express warranty claim, which addresses liability for representations made outside the contract.  Plaintiff has also abandoned its third cause of action for breach of implied warranty arising out of the written contract.

includes "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." Cal. Commercial Code § 2313. Again, the thrust of defendant's argument is that any representations giving rise to an express warranty were made in a representative capacity. As discussed above, however, this is the subject of a genuine dispute and is typically a question for the jury. Accordingly, defendant's motion for partial summary adjudication as to the express warranty claim is denied.[5]

**2. Fraud**

Defendant next moves for partial summary adjudication as to the fraud claim. He maintains that plaintiff did not rely on his representations and that even if it did, this reliance was unreasonable. For the reasons set forth below, defendant's motion is granted in part and denied in part.

In California, a cause of action for intentional misrepresentation or fraud requires that the plaintiff prove the following: (1) a misrepresentation (false representation, concealment, or nondisclosure), (2) knowledge of falsity, (3)

---

[5] Defendant also argues in his reply brief that even if he was acting in his individual capacity, no express warranty could be created in the absence of a contract between him, in his individual capacity, and plaintiff. If this argument was set forth in defendant's moving papers, it was not sufficiently clear to afford plaintiff a fair opportunity to respond, and, in any event, is unsupported by case law indicating that privity of contract is required for express warranty claims. The only cases cited by defendant in his moving papers with regard to this issue either discuss the general circumstances giving rise to an express warranty or recite basic principles of agency.

intent to deceive or induce reliance, (4) justifiable reliance, and (5) resulting damage.  Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996); Engalla v. Permanente Medical Group, Inc., 15 Cal. 4th 951, 974 (1997); Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1201 (9th Cir. 2001).  The absence of any element bars recovery.  Okun v. Morton, 203 Cal. App. 3d 805, 828 (2d Dist. 1988).

### A. Actual Reliance

First, defendant argues that plaintiff did not actually rely on his representations that he would personally guarantee performance of the contract.  Actual reliance exists where the misrepresentation was an immediate cause of the plaintiff's conduct and where, but for the misrepresentation, the plaintiff would not have entered into the contract "in all reasonable probability."  Alliance Mortgage Co. v. Rothwell, 10 Cal. 4th 1226, 1239 (1995).  The misrepresentation need not be the only cause of plaintiff's damages but must have been a "substantial factor" that induced the plaintiff to act.  Wennerholm v. Stanford Univ. Sch. of Medicine, 20 Cal. 2d 713, 717 (1942); see also Engalla, 15 Cal. 4th at 977 (holding that the misrepresentation need not be "the sole or even the predominant or decisive factor").

Here, defendant points out that the final contract contained a clause providing for a full refund if the system did not work as promised and a removal of the equipment at ARE/BEC's expense (the "refund clause").  Moreover, it is undisputed that

the refund clause did not exist at the time of the April 2001 meeting, when defendant made the allegedly fraudulent representations, but was inserted at some point after October 2002.[6]  In other words, defendant's position is that plaintiff entered into the contract on the basis of the later-inserted refund clause -- not on the basis of defendant's representations.

Even taking the refund clause into account, there is still a genuine dispute as to whether defendant's misrepresentations constituted a "substantial factor" in plaintiff's decision to enter into the contract, and whether "in all reasonable probability" it would not have done so without those misrepresentations.  There is a distinction, for instance, between a refund clause and a performance bond, in that plaintiff would have greater certainty of actually recovering its losses with the latter.  Accordingly, plaintiff might have abandoned its request for the bond in light of both the refund clause and defendant's personal guarantee.  This is the type of dispute over which reasonable minds could disagree, rendering summary adjudication inappropriate.

## B. Justifiable Reliance

---

[6] In its opposition, plaintiff states that, when requesting financial statements and a performance bond, "Mr. Hanzlick already had in hand a draft of the contract and found the warranty provisions in the draft to be insufficient."  Pl.'s Opp'n at 12. To the extent that the "warranty provisions" refer to the refund clause, there is no support for this statement in the record. Indeed, plaintiff conceded that the refund clause was not in existence as of October 2002.  Pl.'s Response to SUF ¶ 25.

16

Second, defendant argues that plaintiff's reliance was not justifiable or reasonable.  In assessing the reasonableness of a plaintiff's reliance, the court must consider the plaintiff's level of knowledge, education, and experience.  <u>Guido v. Koopman</u>, 1 Cal. App. 4th 837, 843 (1st Dist. 1991) (holding that a licensed attorney's reliance on the advice of an equestrian instructor regarding the validity of a release of liability was not reasonable).  Justifiable reliance is usually a question of fact but becomes a question of law when reasonable minds could come to only one conclusion based on the facts.  <u>Id.</u> at 843.

Here, defendant maintains that it was unreasonable for plaintiff to take at face value defendant's representations, including the statement that he just sold a company for $50 million, without undertaking any due diligence to determine whether the sale took place, or to even find out the name of the company.  Furthermore, it is undisputed that Hanzlick is "a wealthy man with various consultants and resources at his disposal."  SUF ¶ 22.  In addition, Gregory, who was also present at the April 2001 meeting, is a licensed attorney but did not advise Hanzlick to investigate defendant's statements.

The court finds that it was unreasonable as a matter of law for Hanzlick, and therefore plaintiff, to rely on the April 2, 2001 representations.  Hanzlick's reliance must be judged, not by the standard of a reasonable person, but by the standard of a reasonable CEO or company president.  Viewed from this perspective, his reliance on defendant's April 2, 2001

17

representations without any conducting any due diligence was

unreasonable.  See Grumman Allied Industries, Inc. v. Rohr

Industries, Inc., 748 F.2d 729, 737 (2d Cir. 1984) ("Where

sophisticated businessmen engaged in major transactions enjoy

access to critical information but fail to take advantage of

that access, [] courts are particularly disinclined to entertain

claims of justifiable reliance."); In re AHT Corp., 292 B.R.

734, 743 (S.D.N.Y. 2003) (finding that the failure of a

sophisticated business enterprise to inquire into CEO's

statements regarding business deal was unreasonable as a matter

of law).  Indeed, it could be argued that the more plaintiff

relied on defendant's representations, the more unreasonable it

was for plaintiff not to undertake any type of due diligence.[7]

The court notes that its ruling with respect to the April

2, 2001 representations does not extend to the other,

performance-related representations.  See Compl. ¶ 35.  Contrary

to the representations regarding defendant's financial status,

which could be easily verified, these other representations

(i.e., the claim that new equipment would be used) would be more

difficult to investigate.  At least in part, this is because

many of the performance-related representations reflected

_____

[7] Arguably, plaintiff's reliance on the $50 million statement
might have been reasonable to the extent that it indicated
defendant's willingness to personally guarantee the system, even
if it was unreasonable to the extent it indicated defendant's
financial ability to personally guarantee the system.  However, it
would still be unreasonable for plaintiff to rely on a personal
guarantee that it should have known defendant could not in fact
deliver.

defendant's future intentions.  Moreover, defendant has only demonstrated that reliance with respect to the April 2, 2001 representations would be unreasonable; it has not briefed the issue of reliance with respect to the performance-related representations.

Accordingly, the court grants the motion for partial summary adjudication with respect to the April 2, 2001 representations and denies the motion with respect to the performance-related representations.

### 3. Negligent Misrepresentation

Defendant also moves for partial summary adjudication as to the negligent misrepresentation claim.  The elements of a cause of action for negligent misrepresentation are similar to those for fraud, except that plaintiff need not prove the element of scienter.  <u>Gagne v. Bertran</u>, 43 Cal. 2d 481, 487-88 (1954). Like fraud, a claim of negligent misrepresentation requires proof of justifiable reliance.  For the reasons discussed above, plaintiff's reliance on the April 2, 2001 misrepresentations was unreasonable.  Accordingly, the court grants the motion for partial summary adjudication with respect to the April 2, 2001 representations and denies the motion with respect to the performance-related representations.

### 4. California Business and Profession Code § 17200

Defendant last moves for summary adjudication with respect to the issue of damages under the Unfair Competition Law ("UCL").  Cal. Bus. Prof. Code § 17200.  It is well-settled that

19

1  non-restitutionary damages are not permitted under the UCL.  <u>See</u>

2  <u>Korea Supply Co v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134, 1149

3  (2003).  In the prayer for relief, plaintiff seeks "compensatory

4  and consequential damages," Compl. 12:3-6, which defendant

5  construes as seeking more than restitution.  However, the

6  section of the complaint setting forth the relevant cause of

7  action makes clear that plaintiff seeks only restitution.

8  Accordingly, the court grants the motion to the extent there is

9  any ambiguity that plaintiff seeks more than restitution.

10                          **IV. Conclusion**

11      Accordingly, the court orders as follows:

12          1. Defendant's motion for summary judgment is DENIED.

13          2. Defendant's motion for partial summary adjudication

14          with respect to the breach of express warranty claim

15          is DENIED.

16          3. Defendant's motion for partial summary adjudication

17          with respect to the fraud claim is GRANTED in part and

18          DENIED in part.

19          4. Defendant's motion for partial summary adjudication

20          with respect to the negligent misrepresentation claim

21          is GRANTED in part and DENIED in part.

22          5. Defendant's motion for partial summary adjudication

23          with respect to the issue of damages under section

24          17200 of the California Business and Profession Code

25          is GRANTED.

26  ////

1    IT IS SO ORDERED.

2    DATED: November 17, 2006.

3

4

5    LAWRENCE K. KARLTON
     SENIOR JUDGE
6    UNITED STATES DISTRICT COURT

21